**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Resource Technology Corporation, | ) | **District Court Case No. 08 C 4235** |
| | ) | Consolidated with 08 C 4228 |
| Debtor. | ) | |
| | ) | **Honorable Matthew F. Kennelly** |
| Ungaretti & Harris, LLP, | ) | |
| | ) | |
| Appellant | ) | Bankruptcy Case No.  99-35434 |
| | ) | |
| v. | ) | |
| | ) | |
| Jay A. Steinberg, not Individually but | ) | *Appeal from the United States Bankruptcy* |
| Solely as Chapter 7 Trustee of the Estate | ) | *Court for the Northern District of Illinois,* |
| of Resource Technology Corporation, | ) | *Case No. 99 B 35434* |
| | ) | *Eugene R. Wedoff, Bankruptcy Judge* |
| Appellee | ) | |

# BRIEF OF UNGARETTI & HARRIS, LLP

*Attorneys for Appellant*

Bruce L. Wald ARDC# 02919095
Natalia K. Rzepka ARDC# 06278368
TISHLER & WALD, LTD.
200 S. Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 876-3800

# TABLE OF CONTENTS

BASIS OF APPELLATE JURISDICTION ........................................................................ 1

ISSUES PRESENTED.................................................................................................... 1

APPLICABLE STANDARDS OF APPELLATE REVIEW ........................................... 1

STATEMENT OF THE CASE....................................................................................... 2

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT ................................................................................................................ 8

  I.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN ENTERING THE
  DISGORGEMENT ORDER ........................................................................................ 8

    A.   Contrary to the Disgorgement Order and the Bankruptcy Court's Grounds For
    Entering the Disgorgement Order, The Discretionary Powers Granted to Bankruptcy
    Courts Under 11 U.S.C. §105 Do Not Encompass Disgorgement By
    OneAdministrative Claimant to Achieve Pro Rata Distribution Under 11 U.S.C.
    §726(b) ...................................................................................................................... 8

    B.  The Facts of this Case Do Not Merit the Imposition of Disgorgement as a
    Confiscatory Punishment for Non-Compliance With the Fee Procedures Order ....... 16

  CONCLUSION ........................................................................................................... 21

# **TABLE OF AUTHORITIES**

<u>Cases</u>

Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Widett, Slater & Goldman,  P.C.,
    47 B.R. 925 (D. Mass 1985) ............................................................................................. 1, 2

In re Anolik, 207 B.R. 34 (Bankr. D. Mass. 1997)................................................ 11, 12, 14, 16, 17

In re Ashford Hotels, Ltd. 226 B.R. 797 (Bankr. S.D.N.Y. 1998) ........................................... 2, 8

In re Bell & Beckwith, 87 B.R. 472 (N.D. Ohio 1987) ................................................................. 2

In re Davis, 2007 Bankr. LEXIS 1514 (Bankr. N.D. Al. 2007) ........................................... 16, 20

In re Diamond Mortgage Corporation of Illinois, 135 B.R. 78 (Bankr. N.D. IL. 1990) ........ 17, 18

In re Hyman Freightways, Inc., 2006 U.S. Dist. LEXIS 92206 (U.S. Dist. MN 2006) .......... 9, 10

In re James Sauer, 222 B.R. 604 (B.A.P. 8th Circuit, 1998) ...................................................... 16

In re Kids Creek Partners, L.P., 219 B.R. 1020 (Bankr. N.D. IL. 1998)................................ 12, 15

In re Kisseberth, 273 F.3d 714 (6th Cir. 2001)....................................................................... 18, 19

In re LTV Steel Company, Inc., 288 B.R. 775 (Bankr. N.D. Ohio 2002) .............................. 11, 15

In re Metropolitan Environmental, Inc., 293 B.R. 871 (Bankr. N.D. Ohio 2003)............ 16, 17, 19

In re Mickey Thompson Ent. Grp., Inc., 292 B.R. 415 (B.A.P. 9th Cir. 2003)........................ 1, 2

In re Midway Industrial Contractors, Inc., 272 B.R. 651 (Bankr. N.D. IL 2001) ................. 17, 18

In re St. Joseph's Cleaners, Inc., 346 B.R. 430 (Bankr. W.D. MI 2006)................... 12, 13, 14, 15

In re Triple S Restaurants, Inc., 130 Fed. Appx. 766 (6th Cir. 2005)......................................... 16

In re Vernon Sand & Gravel, Inc., 109 B.R. 255 (Bankr. N.D. Ohio 1989) ............................... 11

In re Langes v. Green, 282 U.S. 531 (1931).......................................................................... 2, 8

Matter of Munford, Inc., 97 F.3d 449 (11th Cir. 1996) ............................................................... 1

<u>Statutes</u>

11 U.S.C. §105................................................................................. 2, 8, 9, 12, 13, 14, 15

11 U.S.C. §328............................................................................................................................. 17

11 U.S.C. §330 .................................................................................................................. 12, 13, 14

11 U.S.C. §331 ............................................................................................................................. 13

11 U.S.C. §363 ...................................................................................................................... 13, 14

11 U.S.C. §503 ............................................................................................................................. 13

11 U.S.C. §549 ...................................................................................................................... 13, 14

11 U.S.C. §726.................................................................................... 2, 3, 7, 8, 9, 12, 13, 14, 15

28 U.S.C. §158(a)(1)............................................................................................... 1

## UNGARETTI & HARRIS, LLP'S OPENING BRIEF

Ungaretti & Harris, LLP ("U&H"), Appellant herein, by and through its attorneys, Bruce L. Wald and Natalia K. Rzepka of Tishler & Wald, Ltd., respectfully states as follows for its Opening Brief:

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1) and Rule 8001(a) of the Federal Rules of Bankruptcy Procedure.

## ISSUES PRESENTED

1.      The Bankruptcy Court abused its discretion in granting the Chapter 7 Trustee's Motion for Disgorgement of Fees (Docket Nos. 4005, 4023 and 4313).

2.      The Bankruptcy Court abused its discretion in entering the June 17, 2008 Order of Disgorgement with respect to not only attorneys' fees but also out of pocket costs advanced by U&H for the benefit of the bankruptcy estate in the context of its representation of the Chapter 11 Trustee.  See Docket no. 4313.

## APPLICABLE STANDARDS OF APPELLATE REVIEW

This Court reviews the decision of the Bankruptcy Court in order to determine whether the Bankruptcy Court abused its discretion in entering the Disgorgement Order of June 17, 2008.  See In re Mickey Thompson Ent. Grp., Inc., 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003); Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Widett, Slater & Goldman, P.C., 47 B.R. 925, 927 (D. Mass 1985).  In doing so, this Court must review the Bankruptcy Court's rulings of law *de novo*.  See Matter of Munford, Inc., 97 F.3d 449, 453 (11th Cir. 1996).  The Bankruptcy Court's findings of fact must be reviewed in

order to determine whether those findings were clearly erroneous.  See In re Bell & Beckwith, 87 B.R. 472, 474 (N.D. Ohio 1987); Continental, 47 B.R. at 927.

This Court should reverse the decision of the Bankruptcy Court if it reaches a "definite and firm conviction" that the Bankruptcy Court abused its discretion.  See Mickey, 292 B.R. at 420.

Finally, it is improper for the Bankruptcy Court to act arbitrarily or willfully.  See Langes v. Green, 282 U.S. 531, 540 (1931)("The term 'discretion' denotes the absence of a hard and fast rule. When invoked as a guide to judicial action it means a sound discretion"); See also In re Ashford Hotels, Ltd. 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998)("In applying its discretion, the court may not act arbitrarily or willfully, but must act 'with regard to what is right and equitable under the circumstances and the law, and dictated by the reason and conscience of the judge to a just result.'").

## STATEMENT OF THE CASE

The instant appeal stems from the Bankruptcy Court's Order Directing Disgorgement of Fees ("Disgorgement Order") (See Docket No. 4313), entered on June 17, 2008 in the Resource Technology Corporation ("RTC") bankruptcy proceeding, currently pending in the United States Bankruptcy Court for the Northern District of Illinois as Case No. 99 B 35434 ("RTC Bankruptcy").  The Disgorgement Order was entered pursuant to a Motion for Order Directing Disgorgement of Fees ("Disgorgement Motion")(See Docket Nos. 4005 and 4023) brought by Jay A. Steinberg ("Steinberg"), the Chapter 7 Trustee, pursuant to §§105 and 726 of the Bankruptcy Code.  The Disgorgement Motion sought disgorgement of $376,235.54 ("Disgorgement Sum"), which represented $215,181.31 in out of pocket costs advanced by U&H in its

representation of the Chapter 11 Trustee, Greg Szilagyi ("Szilagyi") and $161,054.23 in attorneys' fees, which themselves represented a mere 6% of the total attorneys' fees incurred throughout over two years of U&H's representation of the Chapter 11 Trustee.[1] The Disgorgement Sum represented the only compensation and reimbursement of costs advanced by U&H in over two years of representing the Chapter 11 Trustee in vigorously attempting to reorganize the RTC, preserving collateral for numerous creditors and seeking to dismiss the bankruptcy case, amongst other services which not only preserved but also enhanced the value of the RTC Estate. U&H's Final Application for Professional Compensation ("Fee Application") has been pending before the Bankruptcy Court since January 2006 (Docket No. 3002).[2]

On June 26, 2008, U&H initiated this appeal of the Disgorgement Order, enforcement of which has been stayed by this Court pending resolution of this appeal. In light of the discretionary nature of the disgorgement remedy, its questionable implementation in the context of §726(b), and the punitive nature in which it was imposed, the Bankruptcy Court abused its discretion in entering the Disgorgement Order.

## STATEMENT OF FACTS

In November 1999, RTC became the subject of an involuntary bankruptcy proceeding. On August 26, 2003, Szilagyi, an attorney employed by U&H, was appointed Chapter 11 Trustee of the RTC bankruptcy estate. Pursuant to an Order entered on August 28, 2003 by the Bankruptcy Court, Szilagyi retained U&H to act as his

---

[1]    Not to mention approximately $1 Million in unpaid Trustee fees to the U&H law firm.

[2]    U&H's First Interim Fee Application was filed on September 2, 2005. The First Interim Fee Application sought attorneys' fees of $1,876,019.00 and out of pocket costs incurred of $210,062.66. The Final Fee Application, filed on January 25, 2006, sought $1,953,402.60 in attorneys' fees and $215,181.31 in out of pocket costs incurred from August 22, 2003 through August 18, 2003. The Final Fee Application has been pending before the Bankruptcy Court since January 25, 2006.

legal counsel.  During the two years of his appointment, U&H incurred over $2.0 million in unpaid fees and unreimbursed out of pocket costs advanced on behalf of the RTC estate.

On September 18, 2003, the Bankruptcy Court entered an Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Trustee's Professionals (the "Fee Procedures Order") which provided for U&H to be reimbursed for *all* allowed expenses and 80% of any unobjected to fees upon timely circulation of monthly invoices[3], subject to subsequent approval by the Court upon presentation of interim fee applications approximately every 120 days.

Pursuant to the Fees Procedures Order, U&H circulated certain monthly invoices for the months of September 2003 through April 2005, to the designated creditors and parties in interest, with no party objecting to any of the bills or interim payments under the Fee Procedures Order.  From time to time, one of RTC's secured lenders, authorized the Chapter 11 Trustee to use certain available cash collateral generated from operations of RTC's Pontiac facility to make payments to U&H under the Fee Procedures Order. The payments were made in increments of between $15,000.00 to $30,000.00 per month and represented a mere fraction of the fees and costs which U&H would have been entitled to receive under the Fee Procedures Order, as indicated by the Final Application for Professional Compensation filed by U&H.  (See Docket No. 3002).  As an example, in March 2005,  U&H incurred $124,944.50 in fees and $10,798.03 in out of pocket costs advanced.  (See Docket No. 3002).  Under the Fee Procedures Order, it would have been entitled to a payment of $99,955.60, representing 80% of the fees incurred in addition to

---

[3]    The Fee Procedures Order provided for U&H to circulate monthly invoices within twenty (20) days of the conclusion of each month, with creditors being granted ten (10) days from service of each invoice to file a written objection to same.

the $10,798.03 in costs advanced.  In March 2005, U&H received a payment of merely $15,000.00.  The payments occurred between November 2003 and May 2005 and total the $376,235.54 which represents the Disgorgement Sum.  The Disgorgement Sum represents the only payment U&H has received since the inception of its representation of the Chapter 11 Trustee in 2003.

Throughout two years of representing the Chapter 11 Trustee, U&H's services provided many benefits to the bankruptcy estate, including but not limited to the following:

a.    Engaging in negotiations, investigation and litigation to preserve the RTC Estate's interest in numerous landfill facilities against landowners intent on freeing themselves from RTC leases;

b.    Providing services in connection with RTC's environmental obligations on the state and federal levels at all RTC facilities;

c.    Advising RTC on all manner of business issues, including contracts and vendor disputes, labor issues, regulatory matters, insurance matters and similar day-to-day business matters;

d.    Engaging in substantial and complicated litigation with the ICC and State of Illinois in attempting to preserve RTC's profitability and related interests with respect to the sale of electricity generated in Illinois;

e.    Litigating and settling a 2003 adversary proceeding against Commonwealth Edison, following a multi-day trial and appeal, which resulted in an approximately $3.0 million settlement for the Bankruptcy Estate, of which hundreds of

5

thousands of dollars remained for turnover to the Chapter 7 Trustee to enable him to begin the administration of the Chapter 7 proceeding;[4]

       f.      Litigating and settling the Beecher and Chastang litigation following a multi-day trial and appeal, which resulted in cash payments to the RTC Estate, waivers of multi-million dollar administrative claims, and assumption of substantial liabilities and obligations for environmental remediation and other environmental issues by the defendants;

       g.      Litigating to preserve the value of certain contested leasehold rights at various facilities, including the assumption of leases, opposition to the lifting of the stay and similar motions which led to the preservation of significant value for the RTC Estate;

       h.      Maintaining the business of RTC for two years;

       i.      Litigating with the certain secured creditors of the Debtor, namely Banco Panamericano, Chiplease, Inc. and Leon Greenblatt (collectively the "Lenders") in various actions until the Lenders began to seriously explore settlement options with the Trustee;

       j.      Engaging in substantial settlement discussions with the Lenders during the prosecution of the Chapter 11 Trustee's Motion to Dismiss which formed the basis for the an agreement between the Lenders and the Chapter 11 Trustee and ultimately enabled the Chapter 7 Trustee to receive $1.5 Million Dollars which has been used for fees and costs in the Chapter 7 case ("Szilagyi-Lender Settlement");[5]

---

[4]   The Chapter 7 Trustee started this case with over $400,000.

[5]   The Trustee later received $1.5 Million stemming largely from the work of the Chapter 11 Trustee ultimately from the Szilagyi-Lender Settlement.

k.      Providing at no charge and at the urgent request of the Chapter 7 Trustee, substantial assistance to the Chapter 7 Trustee and his professionals, including lengthy meetings with the Chapter 7 Trustee, his team of legal counsel at various firms, and his operators and environmental professional, in preparing, making available and producing large quantities of documents, pleadings, correspondence, discovery, data, transcripts, legal memoranda and other work product U&H developed over its two years of work on the bankruptcy proceeding, so that the Chapter 7 Trustee could immediately begin administering this case..

On June 6, 2007, the Chapter 7 Trustee filed his Disgorgement Motion (See Docket No. 4005), seeking to have U&H disgorge the only compensation it had received throughout the pendency of the RTC Bankruptcy.  The Chapter 7 Trustee argued that disgorgement was appropriate because U&H did not strictly comply with the Fee Procedures Order and also argued that as a potential Chapter 11 administrative claimant, U&H is not entitled to be paid prior to full payment of all Chapter 7 administrative claims and is not entitled to a disproportionate distribution as a Chapter 11 administrative claimant.

On July 3, 2007, U&H filed its Response to the Disgorgement Motion (See Docket No. 4023), arguing that disgorgement would unfairly prejudice U&H and surely violate §726(b) since numerous professional and other creditors received payments for administrative services provided to the RTC Estate, with U&H being the only administrative creditor forced to disgorge.

On July 17, 2007, Steinberg filed his Reply in Support of the Disgorgement Motion  (Docket No. 4036), arguing that U&H's failure to follow the specific dictates of

the Fee Procedures Order and the almost certain administrative insolvency of the RTC

Estate required disgorgement in order to achieve pro rata distribution according to the

statutory priorities.

On June 17, 2008, the Bankruptcy Court issued the Disgorgement Order citing

§§726 and 105 as the basis for disgorgement, which is the subject of this appeal.

## ARGUMENT

### I.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN ENTERING THE DISGORGEMENT ORDER

> **A.**    **Contrary to the Disgorgement Order and the Bankruptcy Court's Grounds For Entering the Disgorgement Order, The Discretionary Powers Granted to Bankruptcy Courts Under 11 U.S.C. §105 Do Not Encompass Disgorgement By One Administrative Claimant to Achieve Pro Rata Distribution Under 11 U.S.C. §726(b)**

A determination of abuse of discretion requires an assessment of whether the

Bankruptcy Court failed to act "with regard to what is right and equitable under the

circumstances and the law, and dictated by the reason and conscience of the judge to a

just result." Ashford Hotels, 226 B.R. at 802. The essence of discretion implies the non-

existence of a hard and fast rule which itself entails the need for sound judgment on the

part of the judge. Langes, 282 U.S. at 540. The Chapter 7 Trustee's Disgorgement

Motion and the Disgorgement Order entered in conjunction therewith, sought

disgorgement of the Disgorgement Sum purportedly to effectuate the Code's policy of

equality of distribution and payment of administrative claims on a pro rata basis.

Contrary to the assertions of the Chapter 7 Trustee and the reasoning of the Bankruptcy

Court, a disgorgement by U&H, the sole administrative claimant required to disgorge,

violates the very policy the Bankruptcy Court claimed to effectuate, producing an

inequitable result unsupported by well-reasoned law.

8

A review of §726(b) simply does not provide any basis for disgorgement since §726 does not address or require the addition of property back into the estate, but rather the distribution of existing property pursuant to a certain priority scheme.

The Bankruptcy Court entered the Disgorgement Order pursuant to §105, which provides for the Court's authority to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Code, and §726 of the Bankruptcy Code, which provides for distribution of property of the estate. While §105 certainly provides the Bankruptcy Court with power to implement the provisions of the Code, §726 does not provide the authority to mandate disgorgement. It simply mandates a pro rata distribution of a bankruptcy estate, containing no provision for adding property back to the estate. In re Hyman Freightways, Inc., 2006 U.S. Dist. LEXIS 92206, *4 (U.S. Dist. MN 2006). "By its terms, §726(b) concerns only the distribution of the estate. It contains no provision for the collection, addition, or return of property of the estate. The statute's plain language simply does not speak to the remedy of disgorgement. By its plain language, §726(b) best promotes the goal of equal distribution in that unpaid administrative expense claims of creditors in the same class should be paid pro rata from the available funds constituting the property of the estate. Id. at *10. Disgorgement of interim professional compensation is a matter of discretion. Id. at 7. (Emphasis added.)

The Hyman Court, faced with a motion for disgorgement of certain Chapter 11 administrative expenses from the Chapter 7 Trustee, determined that §726(b) did not provide the authority to order disgorgement and the equities of the case weighed against disgorgement. Id. at *1. The Chapter 7 Trustee reasoned that absent disgorgement, Chapter 11 administrative claimants would be paid approximately 10% of their claims

but if disgorgement were ordered, Chapter 11 administrative claimants would stand to receive approximately 14%.  Id. at *3.  Additionally, the Trustee argued that absent disgorgement, the Debtor's counsel would receive more than their pro rata share.  Id. The District Court determined that the bankruptcy court did not abuse its discretion in denying the Chapter 7 Trustee's request for disgorgement because the bankruptcy court had properly reexamined the propriety of the fees and weighed the relevant equitable factors, including the fact that the trustee's request would actually create inequity because the trustee was not seeking a disgorgement of compensation paid to claimants with a lower priority to Chapter 11 claimants and the fact that a recalculation of the distribution revealed only a minor potential increase in distribution if disgorgement were ordered.  Id. at 9.

Contrary to the extensive analysis undertaken by the bankruptcy court in Hyman, which included a consideration of the equities and a recalculation of distribution in the event of disgorgement as compared to distribution absent disgorgement, the Bankruptcy Court in the instant case made no such recalculation or equitable consideration, choosing instead to allow administrative insolvency and U&H's failure to strictly comply with the Fee Procedures Order dictate disgorgement.  In so doing, the Bankruptcy Court ignored the fact that the Disgorgement Sum represented the only compensation U&H had received throughout over two years of diligent representation of the Chapter 11 Trustee and being the Trustee, and that the Disgorgement Sum represented virtually all out of pocket costs advanced by U&H on behalf of the RTC Estate and a mere 6% of the total attorneys' fees incurred by U&H throughout its representation.

In addition, the Bankruptcy Court completely ignored the relative gain in distribution percentages brought about by the disgorgement.  After all, a court considering the remedy of disgorgement should weigh the hardship imposed on the professional against the value to the estate, which can be quite small if the administrative expenses incurred to recover the interim payment are as large or nearly as large as the potential recovery.  In re Vernon Sand & Gravel, Inc., 109 B.R. 255, 259 (Bankr. N.D. Ohio 1989).  The Chapter 7 Trustee has indicated that the filed Chapter 11 administrative claims against the RTC estate total more than $80 million, including the administrative claim asserted by U&H.  (See Docket No. 4005).  The addition of the Disgorgement Sum, especially after considering the relative administrative expenses incurred by the Chapter 7 Trustee to recover it, is likely to be of trivial value to the RTC Estate as weighed against the relative hardship on U&H of receiving nothing on account of all the work it performed on behalf of the Chapter 11 estate and receiving no reimbursement for the over $215,000.00 of out of pocket costs advanced on behalf of the RTC estate.  It should also be noted that the Disgorgement Sum will almost certainly be used to pay the Chapter 7 Trustee's fees, never making its way to creditors or Chapter 11 claimants.  In ignoring the equities, the Bankruptcy Court abused its discretion by ignoring the harshness of the disgorgement remedy.

Disgorgement is a harsh remedy that should only be applied in extreme situations and only when mandated by the equities of a case.  In re CHC Industries, Inc.  2006 Bankr. LEXIS 4468, *13 (Bankr. M.D. Fl. 2006)(citing In re LTV Steel Company, Inc., 288 B.R. 775, 779 (Bankr. N.D. Ohio 2002) and also citing In re Anolik, 207 B.R. 34, 39

(Bankr. D. Mass. 1997)).   The equities of the instant case simply do not mandate disgorgement.

Furthermore, a well-reasoned statutory analysis of disgorgement under the Bankruptcy Code adds further question to the imposition of the remedy in the context of situations such as the one in this case.   When faced with the option of ordering disgorgement of an attorney's retainer under §726(b) to ensure that Chapter 11 administrative claimants, including debtor's counsel, receive a pro rata distribution of available estate property, the Bankruptcy Court for the Western District of Michigan determined that the debtor's confirmed Chapter 11 plan provided for payment of the attorney's fees and the final award was not subject to disgorgement under either §726(b) or §330.  In re St. Joseph's Cleaners, Inc., 346 B.R. 430 (Bankr. W.D. MI 2006).  The St. Joseph's Court recognized that courts which have required disgorgement of professional fees at the end of a case to equalize the distribution among administrative claimants all acknowledge that §726(b) does not itself provide for the remedy.  Id. at 433.  See In re Kids Creek Partners, L.P., 219 B.R. 1020, 1022 (Bankr. N.D. IL. 1998) and In re Anolik, 207 B.R. 34, 38-39 (Bankr. D. Mass. 1997).  The St. Joseph's Court reasoned:

> Their apparent rationale is that §726(b) so clearly mandates a pro-rata distribution among creditors that Congress' failure to include a remedy to complement that mandate can be explained only as oversight on its part. Consequently, these courts conclude that it is appropriate for them to exercise their §105(a) authority to correct this obvious error.  I am always troubled when such reasoning is applied.  There are certainly instances where I and other bankruptcy judges have had to address gaps left in the Bankruptcy Code by Congress.  However, for the most part, the Bankruptcy Code is well drafted.  Consequently, judicial intervention should be the exception, not the rule.  Courts should not invent a remedy without first considering carefully the Bankruptcy Code as a whole. (Emphasis added.)

St. Joseph's, 346 B.R. at 434.

The <u>St. Joseph's</u> Court did just that.  After carefully considering the Bankruptcy Code as a whole, the Court refused to order disgorgement of the attorney's fee.  <u>Id</u>. at 444.  The Court recognized that a Chapter 7 Trustee has the authority to pay a Chapter 7 administrative claimant during the administration of the case pursuant to §363.  <u>Id</u>. at 435.  Furthermore, there is a parallel between the process for authorizing payments to professional and payments to non-professionals during the administration of the estate. <u>Id</u>. at 437.  The Court went on to state:

> The difference between the two lies only in the special attention that must be given to the award of professional fees.  Consequently, it is fair to ask why this symmetry should not extend to the issue of disgorgement as well.  Again, it is quite clear that the recipient of an ordinary course payment in a Chapter 11 proceeding cannot be compelled to later disgorge that payment under §549 because the payment was made under the authority of §363(c).  Similarly, it is quite clear that a landlord who has been paid rent by a Chapter 7 Trustee for storage space under the authority of §503(b)(1) and 363(b) cannot be compelled to later disgorge those rents under §549. Should not, then, the bankruptcy estate's payment of professional fees under the authority of §§330 and 331 also be exempt from later disgorgement under §549.
>
> ***
>
> Nonetheless, professionals, unlike other administrative claimants, may still be compelled under the Bankruptcy Code to disgorge compensation previously received from the estate under certain circumstances. However, the authority to "reel back" such fees does not stem either directly from §726(b) or indirectly through the imposition of §105(a).  Nor does the authority derive from the supposed interlocutory nature of the interim award.  Rather, the authority to recover previously awarded fees is found within §330 itself.  <u>Id</u>. at 437-438

The <u>St. Joseph's</u> Court recognized that §330 requires disgorgement only if the amount awarded as interim compensation exceeds what is ultimately awarded under the final award.  <u>Id</u>. at 438-439.  Furthermore, administrative insolvency is not a factor for

consideration under §330's determination of whether a professional fee is reasonable.  Id.

at 439.  Accordingly, the Bankruptcy Code itself:

> …provides a comprehensive scheme for the distribution of estate property during the administration of the bankruptcy case….It was certainly reasonable for courts prior to the enactment of §330(a)(5) to conclude that Congress' own silence as to the circumstances under which awarded professional fees might later be recovered left open the opportunity for the judiciary to fashion its own remedies under the authority of §105(a). However, the courts' latitude under §105(a) prior to 1994 has been circumscribed by Congress' enactment of §330(a)(5).  What had been a question of debate has now been answered by Congress' declaration that disgorgement of attorneys' fees previously awarded may be required only in the context of adjusting the final fee award under §330.  Congress could have added a similar disgorgement remedy to §726(b) at the same time it codified disgorgement for purposes of §330.  It did not.  Id. at 439.

*    *    *

> **There is no question that the ideal under §726(b) would be a pro rata distribution among all Chapter 11 administrative claimants whenever the bankruptcy estate is insolvent.  However, the Bankruptcy Code does not require this ideal.  Indeed, the Bankruptcy Code guarantees through §363(c) and the limitations of §549 that absolute equality of distribution will not be realized as soon as the Chapter 11 debtor uses the first dollar of estate property to pay for a post-petition good or service.  *Consequently, it is reasonable to ask why Chapter 11 professionals should be singled out in pursuit of an unachievable goal based upon a remedy which is not found anywhere within the Bankruptcy Code itself and which is subject to an ever increasing list of exceptions.* St. Joseph's, 346 B.R. at 444.  (Emphasis added.)**

Even assuming that the dictates of §726(b) are stretched to include disgorgement,

a literal application of §726(b) would mandate disgorgement by all who had asserted

claims and received payments in an administratively insolvent case.  However, few cases

exist where a non-professional was ordered to disgorge payment because of subsequent

administrative insolvency. Anolik, 207 B.R. at 40 (Bankr. Mass. 1997)(Emphasis added).

After all, if an estate is administratively insolvent, a pro rata distribution would require

every administrative claimant to disgorge payments they received.  The Anolik Court was

14

troubled by this apparent double standard prevalent in administratively insolvent cases by noting as follows:

> ***Where disgorgement by any party is ordered, such disgorgement should not exceed the amount that would be required to achieve a pro rata distribution assuming that all parties subject to disgorgement were ordered to relinquish funds, regardless of whether the court actually so ordered.   A claimant required to disgorge should not suffer disproportionately simply because the court equitably waived disgorgement for another administrative claimant.   Court authorized professionals are not second-class service providers, nor does their function include the disproportionate subsidization of bankruptcy cases.***

Id. (Emphasis added).

In light of the absence of disgorgement as an available remedy under §726(b) and the clear need to resort to §105 to fill obvious gaps in the Bankruptcy Code with regard to disgorgement in the context of pro-rata distribution, the disgorgement remedy in this case should be viewed as wholly inappropriate by this Court.

Disgorgement is a harsh remedy which will undoubtedly strip U&H of any compensation for all its diligent efforts in servicing the Chapter 11 Trustee and adding unquestionable value to the RTC Estate and to various creditors of the RTC Estate.  Even cases which order disgorgement recognize that compelling circumstances must be shown to warrant the exercise of the Court's discretion regarding disgorgement.  See CHC Industries, 2006 Bankr. LEXIS at 12; LTV Steel Company, 288 B.R. at 779; Kids Creek Partners, 236 B.R. at 875.  U&H's efforts brought millions of dollars into the RTC Estate for distribution to various administrative claimants and other creditors.  U&H's failure to strictly comply with the terms of the Fee Procedures Order does not pose a compelling circumstance to warrant the exercise of the Court's discretion regarding disgorgement. U&H circulated certain monthly invoices from September 2003 to April 2005 with no

objection from any creditors. The disbursements of the Disgorgement Sum represent a mere fraction of what U&H would actually have been entitled to draw under the terms of the Fee Procedures Order. Furthermore, U&H diligently continued to represent the Chapter 11 Trustee and fought to obtain results beneficial to the RTC Estate despite not having received full compensation for its efforts. The entry of the Disgorgement Order simply because of administrative insolvency and U&H's failure to strictly comply with the Fee Procedures Order is tantamount to the imposition of a punitive sanction on U&H with no authority under the Bankruptcy Code.

**B. The Facts of this Case Do Not Merit the Imposition of Disgorgement as a Confiscatory Punishment for Non-Compliance With the Fee Procedures Order**

Numerous courts have recognized the punitive nature of the disgorgement remedy in the context of reducing or completely disallowing any compensation for the efforts of an attorney, acknowledging that counsel's well intentioned efforts merit compensation which should not be "reeled back" absent egregious conduct, violations of requirements of attorney disinterestedness or failures to disclose. In re James Sauer, 222 B.R. 604 (B.A.P. 8th Circuit, 1998) (reducing a full fee disgorgement order as an abuse of discretion where no egregious conduct on the part of a well-intentioned attorney); In re Triple S Restaurants, Inc., 130 Fed. Appx. 766, 772 (6th Cir. 2005)(recognizing that partial disgorgement was not an abuse of discretion despite failure to disclose and file necessary statements since attorneys' efforts "merit compensation"); In re Davis, 2007 Bankr. LEXIS 1514 (Bankr. N.D. Al. 2007)(recognizing that fee disputes where sanctions/disgorgement comes into play are generally "totally unnecessary" and while a fee reduction may be warranted for failure to comply with disclosure requirements under the Code, some compensation for good representation is warranted); In re Metropolitan

16

Environmental, Inc., 293 B.R. 871 (Bankr. N.D. Ohio 2003)(recognizing that while partial disgorgement may be appropriate as a sanction for failure to disclose, it would be patently unfair to require full disgorgement).

Given the draconian impact of a complete loss of not only fees but also out of pocket costs paid out by U&H for the benefit of the RTC estate coupled with the discretionary nature of disgorgement, the Bankruptcy Court abused its discretion in ordering disgorgement under the facts of this case. Courts faced with imparting a complete loss of fees and costs upon a law firm have exercised discretionary leniency in allowing at least a portion of fees and often all costs to be reimbursed, even in the face of attorneys failing to disclose their status as pre-petition creditors or other conflicts of interest. In re Diamond Mortgage Corporation of Illinois, 135 B.R. 78, 96 (Bankr. N.D. IL. 1990); In re Midway Industrial Contractors, Inc., 272 B.R. 651, 663-665 (Bankr. N.D. IL 2001). In Diamond Mortgage, the Bankruptcy Court for the Northern District of Illinois, faced with the possibility of disallowing attorney Platek's application for allowance of fees and expenses as a result of his failure to maintain a disinterested status and otherwise comply with the requirements of §328 (c), determined that: "It would be inherently unfair to deprive him of all compensation and reimbursement because that would give these debtors a significant windfall." Diamond Mortgage, 135 B.R. at 96. The Court recognized that though it had ample justification to deny Platek's fee request entirely, because his services provided benefit to the estate, a 60% reduction in fees and reducing reimbursement of expenses incurred from approximately $117,000 to $97,000 would be appropriate. Id. at 98-101. The Court determined that it would be

inappropriate to reduce reimbursement of Platek's expenses by 60% because to do so would be unfair in light of the benefit those expenses provided to the debtor. Id. at 101.

In Midway Industrial, the Bankruptcy Court for the Northern District of Illinois reduced attorney Trittipo's fees by 44% but allowed reimbursement of all expenses incurred by him despite his non-disclosure of a contingency fee arrangement, stating: "It is unfair to reduce the reimbursement of the costs incurred by Trittipo." Midway Industrial, 272 B.R. at 665. While both Diamond Mortgage and Midway Industrial dealt with allowance of fees and expenses outside the context of disgorgement, each addressed the inequity involved in a complete disallowance of fees and costs. In the instant case, U&H has incurred slightly over $2 million in fees and expenses throughout its representation of the Chapter 11 Trustee for which it will not have received any reimbursement from the RTC estate if the Disgorgement Order is given effect. The Bankruptcy Court abused its discretion in ordering a disgorgement of all fees and out of pocket costs incurred by U&H in representing the Chapter 11 Trustee.

Furthermore, requiring Ungaretti to disgorge $376,235.54, over $215,000.00 of which is comprised of costs advanced on behalf of the Bankruptcy Trustee renders an even more egregiously inequitable and disproportionate result. The Sixth Circuit, despite upholding a disgorgement order, has held that disgorgement of a transcript fee would operate as a windfall to the bankruptcy estate. In re Kisseberth, 273 F.3d 714, 722 (6th Cir. 2001). The Kisseberth Court determined that because the transcript funds were never part of the estate due to the fact that they were advanced to the debtor's attorney on behalf of the debtor's as what was essentially a post petition loan and should therefore be allocated to the "entity that made such payment." Id. The disgorgement order in

Kisseberth stemmed from the attorneys' misappropriation of the entire settlement sum, including the transcript fee which was paid for on behalf of the debtors by a family member, to his unpaid fees and expenses.  Analogously, the over $215,000.00 in out of pocket costs advanced by U&H on behalf of the RTC estate should be reallocated to U&H as the party who made such payment.  To hold otherwise would be the equivalent of sanctioning a windfall for the RTC Estate.

Many courts, even when faced with fee applications from attorneys' who exhibited lack of candor with the bankruptcy court or otherwise failed to fulfill disclosure or disinterestedness requirements, have allowed at least partial compensation to the attorneys, often awarding a percentage of the total fees earned along with all costs incurred.  However, the imposition of a disgorgement sanction usually requires a breach of some fiduciary duty on the part of counsel.  Metropolitan Environmental, 293 B.R. at 890.  In Metropolitan, attorneys' failed to reveal their financial interests which became intertwined with those of insiders after the attorneys' had been handling the case for a significant period of time, the Court however, did not require full disgorgement, holding that "based, therefore, upon this Court's explicit approval of employment for Ms. Fayne and Mr. Bragg, together with the beneficial services performed by them, it would seem highly unnecessary, as well as patently unfair, to require the disgorgement of all of the fees Ms. Fayne and Mr. Bragg have already received fro the performance of their legal services."  Id. at 890.  U&H did not violate the canons of ethics, fail to disclose a financial interest or otherwise conceal pertinent interests from the Court.  It's sole indiscretion was its failure to strictly comply with the Fee Procedures Order, an error which certainly does not warrant the full disgorgement imposed by the Bankruptcy Court.

The United States Bankruptcy Court for the Northern District of Alabama simply reduced fees but allowed all costs incurred to a law firm which acted as counsel for the debtor where the law firm failed to file quarterly fee applications and failed to disclose an increase in their hourly rate, drawing a portion of its fees from the proceeds of estate sales after the death of the debtor.  In re Davis, 2007 Bankr. LEXIS 1514 (Bankr. N.D. Al. 2007).  "Fee disputes, particularly those in which total disgorgement or sanctions are in issue, are extremely unpleasant for all parties; and, generally, totally unnecessary." Id. at * 19.  Despite the law firm's failure to disclose an increase in its hourly rate and failure to file quarterly fee applications, the Davis Court recognized that there were no improper motives on the part of the law firm which "did provide good legal representation to the debtor.  They got his plan confirmed with a 70% distribution to unsecured creditors, Wing's claim was significantly reduced, and its recorded lien was avoided, contingent upon completion of the debtor's plan." Id. at *29.  In light of the significant contributions and lack of improper motives on the part of the law firm, the court allowed 100% of the first $8,315.00 in requested fees and reducing by 25% the remainder of fees, with all costs incurred allowed.

Analogously, U&H made significant contributions to the RTC Estate throughout the pendency of its representation of the Chapter 11 Trustee, achieving beneficial results for many creditors and increasing the value of the RTC Estate as a whole.  U&H lacked any improper motives in failing to strictly comply with the Fee Procedures Order, working diligently to insure that other administrative claimants were paid and secured creditor collateral be preserved.  The Disgorgement Sum represents the only compensation U&H received for any attorneys' fees and out of pocket costs advanced on

behalf of the RTC Estate out of a total of over $2 million in fees and costs incurred over a two year period.  Ordering disgorgement of the only compensation received by U&H, which it itself mostly comprised of costs advanced on behalf of the RTC Estate, simply for a failure to strictly comply with a Fee Procedures Order, is a disproportionate sanction worthy of a finding of abuse of discretion and reversal of the Disgorgement Order.  The punishment of Disgorgement in this case does not fit the "crime" of failing to fully comply with a Fee Procedure Order.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Ungaretti & Harris, LLP, respectfully requests that the Court reverse the decision of the Bankruptcy Court granting the Chapter 7 Trustee's Motion for Disgorgement and enter an Order said relief and any other and further relief this Court deems appropriate.

Respectfully submitted,

UNGARETTI & HARRIS, LLP

By: _____/s/ Natalia K. Rzepka_____
          One of Its Attorneys

Bruce L. Wald ARDC# 02919095
Natalia K. Rzepka ARDC# 06278368
TISHLER & WALD, LTD.
200 S. Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 876-3800

21