IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: RESOURCE TECHNOLOGY, CORPORATION, <br><br> Debtor. <br> _____ <br><br> UNGARETTI & HARRIS, LLP, <br><br> Appellant, <br><br> vs. <br><br> JAY A. STEINBERG, as Chapter 7 trustee of the estate of Resource Technology Corporation, <br><br> Appellee. | Case No. 08 C 4235 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This bankruptcy appeal arises from an order entered in the bankruptcy of Resource Technology Corporation (RTC) requiring appellant Ungaretti & Harris, LLP (Ungaretti) to disgorge to RTC's Chapter 7 trustee payments totaling $376,235.54 that Ungaretti received from RTC's estate. Ungaretti contends that the bankruptcy court abused its discretion by ordering disgorgement. For the reasons set forth below, the Court affirms the bankruptcy court's ruling.

1

## Background

RTC has been in bankruptcy since 1999. From 1999 until August 2003, RTC operated as a debtor in possession. Problems at that point led to the appointment of Gregg Szilagyi, an attorney then employed by Ungaretti, as RTC's Chapter 11 trustee. Szilagyi retained Ungaretti as his counsel. Szilagyi remained the trustee, and Ungaretti remained his counsel, until September 2005, when the bankruptcy court converted the case to a Chapter 7 proceeding and appointed Jay Steinberg as the Chapter 7 trustee. Over the course of its representation, Ungaretti claims it incurred over $2 million in attorney's fees and out-of-pocket costs that it has not been paid.

On September 18, 2003, while the case was still a Chapter 11 case, the bankruptcy court entered an order that established procedures for professionals retained by the Chapter 11 trustee to apply for interim compensation and reimbursement of expenses every 120 days. Under that order, professionals seeking interim compensation were required to circulate monthly invoices to RTC's creditors within twenty days of the conclusion of each month. Those creditors then had ten days to file a written objection to the monthly invoice. For expenses to which there was no objection, the trustee was authorized to make partial payments – subject to the bankruptcy court's subsequent approval pursuant to the requirements of 11 U.S.C. § 331.

It is undisputed that Ungaretti did not strictly comply with the bankruptcy court's order governing interim compensation payments. Without citing to the record, Ungaretti claims that it "circulated certain monthly invoices for the months of September 2003 through April 2005, to the designated creditors and parties in interest, with no party

2

objecting to any of the bills. . . ." Ungaretti Br. at 4.  Ungaretti did not, however, circulate monthly invoices in the manner prescribed by the order and does not explain in its brief what it means when it claims to have sent out "certain monthly invoices."  Nor did Ungaretti apply to the bankruptcy court for interim compensation, as the court's order required, over most of the two years it represented the Chapter 11 trustee.  Rather, Ungaretti submitted a single application for interim compensation on September 2, 2005.  That application detailed the work Ungaretti performed on behalf and for the benefit of RTC's estate.  Ungaretti subsequently filed a final application for compensation.

Despite Ungaretti's failure to comply with the bankruptcy court's order, Ungaretti received payments totaling $376,235.54 between November 2003 and May 2005.  Ungaretti claims that $215,181.31 of that amount was for reimbursement of out-of-pocket expenses and the balance was for legal fees.  It fails, however, to cite anything in the record supporting that breakdown.  The payments were generally made in round amounts between $15,000 and $30,000 on a monthly basis.  Ungaretti claims the amounts paid were a fraction of what it would have been entitled to receive on a monthly basis pursuant to the bankruptcy court's order.

After RTC's bankruptcy was converted to a Chapter 7 case, Ungaretti attempted to reach a settlement with Steinberg as part of a related adversary proceeding.  Under the putative settlement, Ungaretti would have received additional payments from RTC's estate and Steinberg would have waived claims for disgorgement of payments already received by Ungaretti.  The bankruptcy court rejected that settlement, finding it was not in the interests of RTC's estate and that the settlement was inappropriate given the

strength of the estate's potential disgorgement claims. This Court affirmed that decision on appeal. *See Ungaretti & Harris LLP v. Steinberg*, No. 07 C 1292, 07 C 1293, 2008 WL 681023 (N.D. Ill. Mar. 5, 2008).

Steinberg subsequently moved the bankruptcy court for an order to disgorge the compensation that had been paid to Ungaretti. That bankruptcy court granted that motion, offering two rationales.[1] First, the payments received by Ungaretti were unauthorized transfers because Ungaretti had failed to comply with the order governing interim professional compensation and section 331 of the Bankruptcy Code. Second, the bankruptcy court found that RTC's estate was insolvent and that it would be impossible to pay all of the administrative claims incurred during the Chapter 11 phase of the bankruptcy; accordingly, disgorgement was required to ensure a pro rata distribution to all Chapter 11 administrative claimants.

**Discussion**

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a). In general, under Federal Rule of Bankruptcy Procedure 8013, the Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law, including its interpretation of the Bankruptcy Code, *de novo*. *In re Heartland Steel*, 389 F.3d 741, 743-44 (7th Cir. 2004). In this context, the Court acts as an appellate court and applies the same standards of review as are appropriate in other appellate decisions. *Green v. Mass. Cas. Ins. Co.*, 269 B.R. 782, 787 (N.D. Ill. 2001). The bankruptcy court's decision to

---

[1]Though the order itself does not specify the reason for disgorgement, the bankruptcy court gave a brief oral explanation in open court. That explanation referenced and incorporated the bankruptcy court's prior written opinion in the related adversary proceeding.

4

order disgorgement is reviewed for abuse of discretion. *See In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998) (holding award of attorney's fees by bankruptcy court subject to abuse of discretion review).

### 1. Disgorgement of unauthorized payments

It is uncontested that Ungaretti failed to comply with the bankruptcy court's order concerning applications for interim compensation. It is also undisputed that Ungaretti only made a single application to the bankruptcy court for such compensation – in September 2005, long after it had received most of its compensation from RTC's estate. Ungaretti tries to characterize its actions as merely a failure to dot the i's and cross the t's. The bankruptcy court, however, correctly found that Ungaretti's actions were more than technical violations and provided grounds for disgorgement.

The interim compensation order clearly required Ungaretti to circulate monthly invoices within a specified time and also required court approval every 120 days of compensation that had been paid. Ungaretti's claim (without citation to the record) to have circulated "certain monthly invoices" prior to its decision to file a single interim application for compensation after two years does not come close to complying with the order. *See Dalton Dev. Project #1 v. Unsecured Creditors Comm. (In re Unioil)*, 948 F.2d 678, 682 (10th Cir. 1991) (noting that bankruptcy courts, like other courts, have the inherent power to enforce their own lawful orders). It also does not comply with the plain language of the Bankruptcy Code, which requires that the bankruptcy court approve, after notice and a hearing, interim compensation paid to attorneys and other professionals providing services to a bankruptcy estate. 11 U.S.C. § 331. Interim

5

payments to professionals without court approval are impermissible. *In re Genlime Group, L.P.*, 167 B.R. 453, 455 (Bankr. N.D. Ohio 1994).

The payments received by Ungaretti were unauthorized by either section 331 or court order. Steinberg argues, accordingly, that those payments were unauthorized transfers that may be recovered by RTC's estate pursuant to section 549(a). *See* 11 U.S.C. § 549(a).[2] Though Steinberg expressly disclaimed reliance on section 549 in the bankruptcy court, the bankruptcy court relied on it, among other sources of authority, in its decision in the adversary proceeding which it incorporated as part of the ruling that is the basis for the current appeal. Steinberg relies on section 549 in this Court. Moreover, this Court can affirm the bankruptcy court on any basis apparent in the record. *See Klingman v. Levinson*, 877 F.2d 1357, 1360 n.3 (7th Cir. 1989).

The bankruptcy court did not err in ordering disgorgement in this case, because the payments to Ungaretti were unauthorized. *Compton v. Heron, Burchette, Rucker & Rothwell (In re Powers)*, 93 B.R. 513, 515-16 (Bankr. S.D. Tex. 1988) (disgorging fees that were paid to counsel without following the procedures in section 331 and other Bankruptcy Code provisions). *See also In re Taxman Clothing Co.*, 49 F.3d 310, 312, 314 (7th Cir. 1995) ("[A]ll awards of interim compensation are tentative, hence

---

[2]Section 549 of the Bankruptcy Code contains a two-year statute of limitations on efforts to avoid unauthorized transfers of a debtor's property. 11 U.S.C. § 549(d)(1). Most of the payments received by Ungaretti occurred more than two years before Steinberg's disgorgement motion was filed. Ungaretti did not, however, raise the statute of limitations in this Court in response to Steinberg's section 549 argument or the bankruptcy court's use of section 549. Accordingly, the Court will not consider the statute of limitations in this case. *See United States v. Nat'l Steel Corp.*, 75 F.3d 1146, 1149 (7th Cir. 1996) (noting that a statute of limitations is an affirmative defense that can be forfeited).

reviewable – and revisable – at the end of the case.").

**2.      Disgorgement under sections 726(b) and 105(a) of the Bankruptcy Code**

Even if sections 331 and 549 of the Bankruptcy Code did not provide a basis for ordering disgorgement, the bankruptcy court still had independent discretion to do so pursuant to its powers under section 105 of the Code to effectuate the goals of section 726(b). Under Section 726(b), Chapter 7 administrative claims receive priority over Chapter 11 administrative claims. 11 U.S.C. § 726(b). After the Chapter 7 claims have been paid, any money left is paid to Chapter 11 administrative claimants on a pro rata basis (assuming there is not enough money, as is the case here, to fully pay all of the claims). *Id.*

None of the parties dispute that section 726(b) requires a pro rata distribution among claimants at the same priority level. They disagree, however, as to whether a bankruptcy court may order disgorgement of compensation previously paid to a Chapter 11 administrative claimant to effectuate the statute's distribution goals. The Seventh Circuit has not yet addressed this issue. The cases cited by the parties identify three possible approaches: (1) mandatory disgorgement under section 726(b); (2) discretionary disgorgement based on the bankruptcy court's powers under section 105(a) of the Bankruptcy Code[3] to effectuate the goals of section 726(b); and (3) no disgorgement because such a remedy is not expressly provided for in the language of section 726(b). There is little authority addressing this issue, particularly at the circuit

---

[3]Section 105(a) provides that a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

7

court level.

Ungaretti relies primarily on *In re St. Joseph Cleaners, Inc.*, 346 B.R. 430 (Bankr. W.D. Mich. 2006). In that case, the court declined to disgorge fees paid to counsel during the Chapter 11 portion of a bankruptcy that was later converted to a Chapter 7 case even though the estate was unable to pay all of the Chapter 11 administrative claimants in full. *See generally id.* The court began its analysis by noting that section 726(b) only addresses distribution among administrative claimants and does not provide a disgorgement remedy. *Id.* at 433. It went on to criticize other judges that had used section 105(a) as the basis for ordering disgorgement in order to accomplish the pro rata distribution required by section 726(b), reasoning that the Bankruptcy Code is "well drafted," making it improper to "invent" remedies not provided for by statute. *Id.* at 434. The court also noted that disgorgement in this context unfairly singles out professionals, such as lawyers, compared to other administrative claimants. *Id.* at 436-38, 444.

At the other end of the spectrum, *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004), focused on the unambiguous, mandatory language used in section 726(b) regarding equality in distribution to hold that the bankruptcy court was required to disgorge interim compensation paid to a professional. *Id.* at 662, 664. The *Specker Motor* court noted that interim compensation is always subject to adjustment and "subject to the statutory pro rata distribution scheme in § 726(b)." *Id.* at 663. To hold otherwise, the court felt, would improperly "elevate" the status of interim compensation. *Id.* at 664. Despite the apparent harshness of this rule (under which the counsel in

8

*Specker Motors* received only a "sliver" of the compensation owed), equality of distribution was more important under the Bankruptcy Code. *Id.*

Most courts to consider this issue have come down in the middle, finding that it is a matter of the bankruptcy court's discretion whether to order disgorgement pursuant to section 726(b) – either directly under that section or through an order issued under section 105(a). *See, e.g.*, *Matz v. Hoseman*, 197 B.R. 635, 639-40 (N.D. Ill. 1996) (affirming disgorgement of professional fees regardless of whether the authority stemmed from section 726(b) or section 105(a)); *In re Anolik*, 207 B.R. 34, 39-40 (Bankr. D. Mass. 1997) (holding that disgorgement of professional fees was discretionary matter dependent on the equities of individual cases); *In re Chute*, 235 B.R. 700, 701-02 (Bankr. D. Mass. 1999) (same); *In re Kids Creek Paterner, L.P.*, 219 B.R. 1020, 1022 (Bankr. N.D. Ill. 1998) (same). Thus, a number of cases hold that a bankruptcy court has the discretion to order disgorgement of attorney's fees where appropriate but is not compelled to do so.

The Court need not decide whether disgorgement is mandatory or discretionary. Even if the remedy is discretionary, the bankruptcy court did not abuse its discretion when it ordered disgorgement. One factor to consider in this inquiry is "whether the party facing disgorgement had a reasonable expectation that the payment received was final." *In re Anolik*, 207 B.R. at 39. Here, Ungaretti could have had no such expectation given that it knew (or should have known) that it had failed to comply with both section 331 and the bankruptcy court's interim compensation order. Ungaretti should have been aware that receiving interim fee payments in round figures for over two years

9

without any approval by the bankruptcy court left it open to a disgorgement claim. Moreover, Ungaretti should have known that disgorgement could occur, given the warnings made by several judges in this district in prior cases that attorneys provide services and accept interim compensation at their own peril. *See Matz*, 197 B.R. at 640; *In re Kids Creek Partners, L.P.*, 219 B.R. at 1022. Under these circumstances, the Court cannot say that the bankruptcy court abused its discretion.

Ungaretti's arguments to the contrary are unpersuasive. First, most of the cases Ungaretti cites on the equities of disgorgement concern full or partial disgorgement in other contexts, including attorney misconduct. Ungaretti also focuses on the fact that if the bankruptcy court's ruling stands, it will receive no compensation for over $2 million worth of services it provided to RTC. Though this may be true, the unpaid Chapter 11 administrative claims total well over $80 million in this case. Unfortunate as that is, many claimants – not just Ungaretti – will receive only a "sliver" of what they are owed. *Specker Motor Sales Co.*, 393 F.3d at 664. Given this shortfall, the bankruptcy court did not abuse its discretion by emphasizing the need for ensuring a pro rata distribution ahead of the hardship imposed on Ungaretti. Ungaretti similarly notes that any fees it is required to disgorge likely will be used to pay the Chapter 7 trustee's fees instead of Chapter 11 administrative claimants. If true, this fact lends further support to disgorgement because, absent disgorgement, a party with a higher priority claim than Ungaretti would remain under-compensated even though Ungaretti had been paid in part.

Finally, Ungaretti claims that it has been singled out for disgorgement while many other Chapter 11 administrative claimants have kept compensation they received. This

argument might carry some weight if it were properly supported. Ungaretti, however, has not identified a single Chapter 11 claimant that it claims has been treated more favorably, much less pointed to evidence that any such claimant is similarly situated to Ungaretti (*e.g.*, had received interim compensation without court approval).

In light of all these circumstances, the bankruptcy court did not abuse its discretion by ordering disgorgement.

## Conclusion

For the foregoing reasons, the Clerk is directed to enter judgment affirming the decision of the bankruptcy court.

```
                                          _____
                                                MATTHEW F. KENNELLY
                                                United States District Judge
```

Date: October 20, 2008